IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 18-cv-01552-MEH

CYNTHIA MULLEN,

    Plaintiff,

v.

SOUTH DENVER REHABILITATION, LLC, d/b/a Orchard Park Health Care Center,
CLEAR CHOICE HEALTH CARE, LLC, and
SBK CAPITAL, LLC,

    Defendants.

# ORDER ON PENDING MOTIONS

**Michael E. Hegarty, United States Magistrate Judge**.

    The parties have filed pretrial motions. I originally set these motions for oral argument but, after review of the briefing, determined such argument will not materially assist the Court in their adjudication. Therefore, the Court makes the following rulings.

**I.**      **Defendants' Motion for Leave to Amend Final Pretrial Order**

    This motion is ECF 169 and was filed on September 28, 2020. Defendants represent that "will call" witness Jeffrey Cleveland, president of Defendant Clear Choice Health Care Center, LLC (CCHC), had COVID-19 at some undisclosed time in the recent past, which required hospitalization and use of a ventilator. Based on these facts alone, Defendants state that Mr. Cleveland will be unable to testify, and they propose his testimony by deposition. In light of this request, Defendants also seek to add a new "will call" witness, Geoff Fraser, a member of CCHS, to testify in court and discuss some of the matters to which Mr. Cleveland would have testified. Defendants offer the opportunity for Plaintiff to depose Mr. Fraser prior to trial.

Plaintiff objects, relying on the general preference for testimony to be live at a jury trial. She represents that Mr. Cleveland is a critical fact witness, which I do not think can be reasonably questioned. She also argues that the insertion of Mr. Fraser at this late date will prejudice her trial preparation.

At the time of the motion, a trial was set in this matter for November 2020. The COVID-19 pandemic has required the trial to be rescheduled for March 2021. Therefore, the issues raised by the parties are largely moot or, alternatively, not yet ripe. In the event, at the time of the trial preparation conference, Mr. Cleveland is objectively unable to testify (established by current medical documentation), Defendants may raise the issue again. At the present time, all trials in the District of Colorado for 2020 have been vacated. For those trials that have occurred in the past several months, witnesses have had the option of testifying (1) in the courtroom, properly masked; (2) by video from the adjacent jury deliberation room; or, in some occasions, (3) by video remotely from another location. It is likely that this will be the rule for a trial in March 2021 as well. However, Plaintiff would be advised to take up Defendants' offer to depose Mr. Fraser (at Defendants' expense, I add) in the event justice requires the granting of a renewed motion to amend by Defendants.

Therefore, Defendants' Motion for Leave to Amend Final Pretrial Order is denied without prejudice.

## II.     Plaintiff's Motion to Exclude Defendants' Expert Connie Cheren

This motion is ECF 170. Plaintiff seeks to exclude Defendants' expert, Connie Cheren, under Fed. R. Civ. P. 26(a) and Fed. R. Evid. 702. Plaintiff's reasons for the motion are legion. I will analyze them separately.

### A.    Counsel Drafted the Report for Ms. Cheren

It appears undisputed that defense counsel created the first draft of the Cheren report. To soften the blow of Plaintiff's "ghost writer" allegation, Defendants proffer that Ms. Cheren spent "21 hours of review[ing documents], had a 30 minute to one hour discussion with counsel regarding her opinions based on her review, and . . . reviewed the report for approximately two and a half hours prior to adopting and signing [it]." Response at 3.

Rule 26(a)(2)(B) requires an expert report to be "prepared and signed by the witness." The Advisory Committee Notes expound that the Rule "does not preclude counsel from providing assistance to experts in preparing the reports . . . . [T]he report, which is intended to set forth the substance of the direct examination, should be written in a manner that reflects the testimony to be given by the witness and it must be signed by the witness." The Notes do not define the precise extent to which an attorney may participate. Thus, I examine case law (all at the district court level) addressing this issue.

In *Marek v. Moore*, 171 F.R.D. 298 (D. Kan. 1997), the expert prepared a report, and thereafter counsel made revisions and submitted it to opposing counsel, unsigned. In refusing to strike the report, the court indicated its approval of a process in which an attorney adjusts an expert's report to comply with Rule 26 requirements. *Id.* at 301. The court appeared to adopt the necessary bright line rule that the report must be "freely authorized and adopted as [the expert's] own." *Id.* at 302.

In *Indiana Ins. Co. v. Hussey Seating Co.*, 176 F.R.D. 291 (S.D. Ind. 1997), the attorney prepared the Rule 26 disclosure (the court was vague on exactly what "disclosure" meant but presumably was the actual written opinion), but the expert prepared the nine opinion reports and

work papers attached to the disclosure. The court expressed its displeasure with the manner in which the report was prepared but did not strike the expert primarily because "certain of his opinions and the bases for [them] w[ere], in fact, prepared and adopted by him at his deposition." *Id.* at 293. In *Indiana Ins. Co.* it was clear that the attorney who drafted the report lifted at least some of the opinions directly from the expert's written work product. Ultimately, the court found the lack of the expert's signature and the drafting role of the attorney to have violated Rule 26 but held the failure to be "harmless" because the report was timely and the opposing counsel had the opportunity to depose the expert. *Id.* at 294.

In *Manning v. Crockett*, No. 95 C 3117, 1999 WL 342715 (N.D. Ill. May 18, 1999), the court confronted a report that was nearly identical to the complaint in the case and was adopted by the expert. Unfortunately, the record before the court did not establish whether the expert wrote the report using the complaint as a template, or whether counsel did. On that basis the court did not strike the expert report, but the court's order was without prejudice. The court made it clear that if later evidence established the attorney wrote the report, it would be stricken.

> [P]reparing the expert's opinion from whole cloth and then asking the expert to sign it if he or she wishes to adopt it conflicts with Rule 26(a)(2)(B)'s requirement that the expert "prepare" the report. Preparation implies involvement other than perusing a report drafted by someone else and signing one's name at the bottom to signify agreement. In other words, the assistance of counsel contemplated by Rule 26(a)(2)(B) is not synonymous with ghost-writing. . . . Allowing an expert to sign a report drafted entirely by counsel without prior substantive input from an expert would read the word "prepared" completely out of the rule.

*Id.* at *3. *See In re Jackson Nat'l Life Ins. Co. Premium Litig.*, 46 Fed. R. Serv. 3d 201, 2000 WL 33654070 (W.D. Mich. Feb. 8, 2000) (holding substantially the same); *Trigon Ins. Co. v. United States*, 204 F.R.D. 277, 291-96 (E.D. Va. 2001) (discussing cases).

In *Seitz v. Envirotech Sys. Worldwide Inc.*, No. CIV. A. H-02-4782, 2008 WL 656513, at *2 (S.D. Tex. Mar. 6, 2008), the expert "reviewed relevant materials, developed opinions, and discussed those opinions with counsel." *Id.* at *2. So far, this is consistent with Ms. Cheren. Although counsel drafted the lion's share of the report, the expert testified that he "'wrote some of the material in the original report . . . . But not all of the material. *Id.* The expert later altered the initial draft of the report, modifying it to reflect his opinions." *Id.* This passed muster, according to the court.

The effort at Ms. Cheren's report here is at the outer limit of what might be considered as complying with Rule 26. The only reason I do not strike it is because this is not a situation in which "'an expert merely offers his client's opinion as his own.'" *Numatics, Inc. v. Balluff, Inc.*, 66 F. Supp. 3d 934, 943 (E.D. Mich. 2014) (quoting *ASK Chemicals, LP v. Computer Packages, Inc.*, 593 Fed. App'x. 506, 510 (6th Cir. Dec. 10, 2014)). The record appears to reflect the report was prepared by counsel *after* a substantive conversation between the expert and counsel. This distinguishes the present case from that in *James T. Scatuorchio Racing Stable, LLC v. Walmac Stud Mgmt., LLC*, No. CIV.A. 5:11-374-DCR, 2014 WL 1744848, at *1 (E.D. Ky. Apr. 30, 2014) (striking the expert), in which the expert did not discuss the report with counsel *before* the report was prepared. *See Crowley v. Chait*, 322 F. Supp. 2d 530 (D.N.J. 2004) (Testimony of plaintiff's expert would not be excluded on ground that it violated requirement that expert's testimony "be accompanied by a written report prepared and signed by the witness" because, while the accompanying report was signed by the witness, it was prepared by plaintiff's attorney, and, although initial draft of report was prepared by attorney, it was based upon a narrative drafted by attorney following a dictation interview with the expert, and the expert claimed to have substantial input into the final report.) (description contained in headnote). Further, Ms. Cheren has adopted the opinions

in her report as her own. Nevertheless, I do not believe flirting with a violation of Rule 26 is good practice, and this line of questioning by Plaintiff will certainly be admissible on cross examination.

B.   Ms. Cheren Relies on Evidence She Could Not Have Reviewed

Plaintiff alleges Ms. Cheren relied on deposition testimony for which she did not have a transcript. Further, Plaintiff alleges Ms. Cheren's time records do not reflect her review of other important evidence that was used in formulating her opinions. Defendants do not directly respond to this allegation. As Plaintiff states, this information "calls into question" whether Ms. Cheren devoted sufficient review to evidentiary materials prior to the execution of her report. Again, this will be an appropriate area of cross examination which goes to weight and credibility but not admissibility of her opinions.

C.   Ms. Cheren's Failure to Recall Evidence Underlying Her Opinions

Plaintiff alleges Ms. Cheren could not recall material information about her report during her deposition, including critical witness names and testimony. Objectively this demonstrates a marked lack of preparation for her deposition. Plaintiff seeks to use this lack of preparation as additional support for the report's failure to comply with Rules 26(a) and 702, but Plaintiff does not argue that Ms. Cheren's lack of preparation deprived Plaintiff of her ability to adequately prepare for trial. If, at trial, Ms. Cheren displays the same lack of preparation as to the material underlying her report, that, in itself, will be useful cross examination. If, at trial, Ms. Cheren shows a remarkable improvement in her memory, again, Plaintiff will be permitted to contrast her recollection at deposition with her recollection at trial, as impeachment. In any event, while each new deficiency potentially erodes the effectiveness of Ms. Cheren's hypothetical trial testimony, I do not believe cumulatively they require her exclusion.

D.  Misstatement of Critical Evidence by Ms. Cheren

Plaintiff alleges Ms. Cheren misstates evidence of record in her report, and because of this, the report and opinions are unreliable. In their response, Defendants implicitly agree that some of the evidence Ms. Cheren relied upon later proved to be inaccurate but argue that the essence of her report relies on accurate evidence. Suffice it to say that an attorney has, under Fed. R. Civ. P. 11, an ethical obligation to apprise herself of the facts of a case, and knowingly permitting a witness to testify to facts the attorney knows to be untrue could be characterized as subornation of perjury. Of course, that will not happen in this case. I will rely upon counsel for both sides to fastidiously guard the integrity of the trial, as will I. Any testimony that either side establishes is demonstrably false will be addressed with an appropriate jury instruction as well as potential sanctions.

E.  Ms. Cheren's Qualifications

Plaintiff states that Ms. Cheren is not qualified "to testify about federal anti-discrimination laws, outrageous conduct, and issues that are related to effective communication for deaf individuals." Motion at 20. However, no one in a federal trial is permitted to testify about the law. To be clear, no one will be permitted to *testify* (as contrasted with counsel's argument) in this trial that the Americans with Disabilities Act, or Colorado's common law outrageous conduct standard, was violated. Neither will anyone be permitted to testify that any particular duty under the law is non-delegable. The parties will introduce evidence, I will instruct the jury concerning the law to apply to that evidence, and the jury will decide if the law has been violated. The parties should consult *Baumann v. Am. Family Mut. Ins. Co.*, 836 F. Supp. 2d 1196, 1201 (D. Colo. 2011) (addressing expert witness boundaries concerning impermissible testimony about the law versus permissible testimony on the parties' conduct) and similar cases in drafting their witnesses' trial

7

testimony. The experts will also not be permitted to render *opinions* (as opposed to facts) concerning Plaintiff's mental state or state of mind (*e.g.*, opinions concerning whether Plaintiff acted voluntarily in any circumstance, whether she was or was not in "emotional distress," whether Defendants intended to cause emotional distress, etc.).

Plaintiff's remaining Rule 26 arguments go to the weight and credibility of Ms. Cheren (or her bias) and her testimony, and not admissibility. For the above-stated reasons, Plaintiff's Motion to Exclude Defendants' Expert Connie Cheren is denied.

### III. Defendants' Motion to Strike and Exclude the Expert Testimony of Roger C. Williams

This motion is ECF 171. Defendants' argument in support of striking Plaintiff's expert, Mr. Williams, is that he incorrectly administered three tests to Plaintiff in reaching his opinions and preparing his report. Providing context, in his deposition Mr. Williams stated that he studied (1) Plaintiff's communications skills, (2) what she needs to communicate, (3) how well she understands different types of communications, (4) what communication needs Plaintiff presented at South Denver Rehabilitation, and (5) what the facility did to meet those apparent needs.

The first test Mr. Williams administered is the **R**apid **E**stimate of **A**dult **L**iteracy in **M**edicine (**REALM**). This measures the patient's ability to read and pronounce a list of words. Defendants state that the subject is given five seconds to read each word (and, Mr. Williams asserts, tries to indicate an understanding of what the word means through body language or otherwise) but skips the words the subject cannot pronounce. Defendants argue first that this test is not designed for a deaf person. Second, correct administration of the test does not include attempts by the subject to actually define the word, but that this is precisely what Mr. Williams did. This, Defendants continue, resulted in lower scores for the Plaintiff because, logically, to both pronounce and define

a medical term is more complicated than simply pronouncing it.  Finally, Defendants state that Mr. Williams used a generic list of medical terms and not those tailored to what Plaintiff actually confronted during her stay at South Denver Rehabilitation.

The next test is titled **T**est **O**f **F**unctional **H**ealth **L**iteracy in **A**dults (**TOFHLA**) and is designed to measure adult medical literacy.  It tests a subject's ability to read and understand medical literature.  Defendants argue it also was not designed for the deaf.  Plaintiff's result in this test was that she had "Inadequate Functional Health Literacy."  Defendants argue Mr. Williams does not give any context or perspective for this result, *i.e.*, how many other adults also have inadequate health literacy.  They argue this renders the result meaningless if, for example, the vast majority of adults (hearing and deaf) would also fall into this category, making it irrelevant at trial.

The final test is the **C**ommunication **S**kills **A**ssessment (**CSA**).  It was developed by Mr. Williams and others.  Defendants argue it has not been peer reviewed, is not used anywhere else in Colorado, and lacks indicia of credibility within the test itself.  Defendants equate this test with "junk science" of the type for which courts must serve as a gatekeeper to preserve the integrity of the jury process.

In her response, Plaintiff first assets that Defendants did not confer with Plaintiff prior to filing the motion, pursuant to D.C.Colo.LCivR 7.1(a).  Defendants filed no reply and, thus, do not deny the failure to confer.  Plaintiff argues that such a conferral would have made a material difference here.  I agree and would deny the motion on that basis, however, these issues will come up at trial and, therefore, I take the liberty of addressing them briefly here.

First, for purposes of their motion, Defendants do not challenge the qualifications of Mr. Williams but reserve the right to do so at trial.  Based on Plaintiff's proffer, he appears to have

9

qualifications sufficient to testify in federal court, but I will not preclude the defense from presenting argument at trial. Further, Defendants' general objection that several of the tests were not designed for the deaf is simply a product of the facts and circumstances in this case, specifically, Plaintiff is deaf. If there are tests that were designed for deaf persons that would have been appropriate in these circumstances, at trial Defendants may cross examine and impeach Mr. Williams on that basis.

Second, regarding the **REALM** test, the response creates a fact issue concerning the extent to which Mr. Williams had Plaintiff do more than simply read the words. The parties will be able to explore this at trial. Defendants will be permitted to attack Mr. Williams' incorrect administration of the test, thereby undermining the results. I agree with Plaintiff that Defendants' attack concerning the **REALM** test goes to weight and not admissibility.

Third, regarding the **TOFHLA** test, Plaintiff argues that the test is not designed for purposes of comparison with the general public. She states it is designed to compare her ability to communicate in written English with her ability to communicate in American Sign Language. Plaintiff does not refute Defendants' argument that the lack of comparative context for "Inadequate Functional Health Literacy" may lessen its efficacy before the jury. Again, Defendants will be permitted to explore this gap at trial, and Defendants' argument goes to weight and not admissibility.

Finally, concerning the **CSA**, Plaintiff's response again creates a fact issue concerning peer review. The utilization of the **CSA** that Plaintiff describes (various state departments of health, healthcare organizations, etc.) may well constitute the legal equivalent of peer review. Further, the *Daubert* enumerated factors are not the beginning and end of this Court's gatekeeper function. In *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 152 (1999), the Court instructed that trial courts have discretion beyond the factors identified in *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579,

589 (1993) (among which is whether the opinion has been subjected to peer review): "[W]e [do not] deny that, as stated in *Daubert*, the particular questions that it mentioned will often be appropriate for use in determining the reliability of challenged expert testimony. Rather, we conclude that the trial judge must have considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable." The central objective is to ensure that any expert "employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Id. See Oddi v. Ford Motor Co.*, 234 F.3d 136, 156 (3d Cir. 2000) (in addition to *Daubert* factors, a trial court could consider the relationship of a technique to methods established as reliable, and the nonjudicial uses to which method has been put); *United States v. Garza*, 566 F.3d 1194 (10th Cir. 2009) (noting that an expert opinion may be admissible even if none of the *Daubert* factors are met but the expert has acquired specialized knowledge through experience).

I will permit trial briefs in advance of the trial in this matter to allow the parties to apprise me of their respective arguments that may be made concerning the introduction of evidence and will fulfill the Court's obligation of ensuring the jury receives only that evidence permitted by the Federal Rules of Evidence and binding authority applying those Rules.

For these reasons, Defendants' Motion to Strike and Exclude the Expert Testimony of Roger C. Williams is denied.

## IV.    Conclusion

As stated above, the Court makes the following rulings: Defendants' Motion for Leave to Amend Final Pretrial Order [filed September 28, 2020; ECF 169] is **denied without prejudice**; Plaintiff's Motion to Exclude Defendants' Expert Connie Cheren [filed October 1, 2020; ECF 170]

is **denied**; and Defendants' Motion to Strike and Exclude the Expert Testimony of Roger C. Williams [filed October 2, 2020; ECF 171] is **denied**.  Additionally, in light of these rulings, the hearing scheduled for November 23, 2020 is **vacated**.

SO ORDERED.

Dated at Denver, Colorado, this 12th day of November, 2020.

BY THE COURT:

*Michael E. Hegarty*

Michael E. Hegarty
United States Magistrate Judge